UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD COSBY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:20cv459 (MPS) |
| | : | |
| LIEUTENANT RUSI, | : | |
|     Defendants. | : | |

### INITIAL REVIEW ORDER

On April 3, 2020, the *pro se* plaintiff, Howard Cosby, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") who is proceeding *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983 against six DOC employees at MacDougall-Walker Correctional Institution ("MWCI") in their individual and official capacities: Lieutenant Rusi, American with Disabilities Act ("ADA") Coordinator Santana, Correctional Health Services Program Director ("Health Services Program Director") Colleen Gallagher, Restrictive Housing Unit ("RHU") Manager Claudio, Warden Barone, and RN Michelle. Compl. [#1]. He alleges violations of the Eighth Amendment to the United States Constitution, Title II of the ADA, and the Rehabilitation Act. He requests damages and a declaratory judgment.

For the following reasons, the court will permit the Eighth Amendment claims to proceed against Lieutenant Rusi, RN Michelle, ADA Coordinator Santana, Health Services Program Director Gallagher, RHU Manager Claudio, and Warden Barone in their individual capacities for damages, and the ADA and Rehabilitation Act claims to proceed against Lieutenant Rusi in her official capacity.

1

## I.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.  ALLEGATIONS

On December 10, 2019, Lieutenant Rusi placed Cosby in RHU on a falsified disciplinary report based on Cosby's alleged refusal of housing after he had informed Lieutenant Rusi and RN Michelle that he required a handicap accessible cell and assistive aids including orthopedic shoes, and shoe laces to support his ankle-foot orthosis ("AFO") brace and feet, among other

assistive aids ("Assistive Aids"). Compl. [#1] at 5. However, Lieutenant Rusi and RN Michelle never provided Cosby with the handicap accessible cell or the Assistive Aids. *Id.*

On December 11, 2019, Cosby fell while trying to switch from his wheelchair to the non-handicap accessible toilet in the RHU cell. *Id.* His left foot gave out due to his lack of AFO support and no shoe laces to secure such support in his shoe. *Id.* His left ankle and back were injured in the fall. *Id.*

RN Michelle had Cosby sign a document about his assistive aids. *Id.* at 6. He informed her that he would not wear state velcro shoes, but she said, "Oh, well." *Id.*

On December 11, 2019, Cosby sent RHU Manager Claudio a request for help to obtain the laces, a handicap accessible cell, pain medication, and x-rays. *Id.* He informed her of his injuries and his disability; he also informed her that he could not wear state shoes. *Id.* However, RHU Manager Claudio never responded. *Id.* On December 15, 2019, Cosby sent her another request, asking for the same things as his prior request. *Id.* However, although it was part of her responsibility, RHU Manager Claudio never ensured that Cosby received his handicap accessible cell or his laces during his confinement in the RHU through January 9, 2020. *Id.* Due to RHU Manager Claudio's conduct, Cosby fell and endured foot and ankle pain because he did not have any laces to secure his AFO support. *Id.*

He also informed ADA Coordinator Santana verbally and in writing about his fall and his need for the reasonable accommodation of a handicap accessible cell and Assistive Aids. *Id.* at 7. However, Cosby never received the reasonable accommodation while he was housed in the RHU from December 11, 2019 to January 9, 2020. *Id.* ADA Coordinator Santana did not make sure that Cosby received the orthopedic shoes, which would have eased his pain in his left foot and

3

ankle. *Id.* Santana was responsible for making sure that the MWCI had handicap accessible RHU cells, but he failed to do so. *Id.*

On December 22, 2019, Cosby sent Warden Barone a request informing her that he was injured in his non-handicap accessible cell. *Id.* He asked her to transfer him to a handicap accessible cell, send him to the medical unit, or transfer him to an adequate handicap cell at another facility. *Id.* However, she never responded to his request. *Id.*

On December 16, 2019, Cosby filed an ADA Appeal CN 9602. *Id.* at 8. Colleen Gallagher visited him in the RHU and indicated that she would take care of everything, but she failed to do so. *Id.*

Cosby has attached Gallagher's January 29, 2020 letter to him stating:

> I am in receipt of an ADA appeal that was collected here on January 8th 2020. You did not process this appeal under AD 8.9 and as such I need to return it to you. Please submit to the Administrative Remedy Coordinator Ms. Bennett so it can be logged and receipted. Please remember to fill it out correctly and include a stated resolution. In this case your request for accommodation has not been returned but I met with CS Santana on January 28th who provide me a copy to which I have attached to the response. It may have crossed in the mail and you no longer need to file an appeal.
> As we discussed your need for gloves, you would request this from medical when you are out of RHU and moving about your chair. The rails in RHU have not yet been installed and therefore a portable commode may be an option if your provider wishes to order one in the meantime. I am following up with a direct request to your provider as well.

*Id.* at 17. Cosby never received a commode or had rails installed. *Id.*

### III. DISCUSSION

Cosby alleges violation of the Eighth Amendment based on deliberate indifference to his medical needs and violation of the Title II of the ADA and the Rehabilitation Act.

#### A. **Deliberate Indifference to Medical Needs**

4

The court construes the Cosby's allegations as asserting Eighth Amendment claims based on the Defendants' deliberate indifference to his medical needs.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the Defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the Defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

### 1.     **Objective and Subjective Components**

With respect to the objective component, the court assumes for purposes of this initial review that Cosby has a serious medical need for a handicap accessible cell and Assistive Aids. As for the subjective component, Cosby alleges that RN Michelle and Lieutenant Rusi ignored his requests for a non-handicap accessible cell and for Assistive Aids; that he made requests without success for the handicap accessible cell and Assistive Aids to RHU Manager Claudio and ADA Coordinator Santana; that Warden Barone never responded to his request for a reasonable accommodation of a handicap accessible cell, transfer, or placement in the medical

5

unit; and that Health Services Program Director Gallagher told him that she would "take care of everything" but she never provided him with the handicap accessible cell. [#1] at 5-8. On this initial review, the court construes these allegations liberally as establishing that the Defendants acted with a conscious disregard of Cosby's serious medical needs. The court will permit his claims to proceed against the Defendants in their individual capacities for damages.

### 2. Eighth Amendment Official Capacity Claims

Cosby seeks a declaratory judgment, stating that the Defendants have violated his rights. He also seeks damages from the Defendants in their official capacities for violation of his constitutional rights.

As an initial matter, any claims based on constitutional violations for money damages against the Defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

6

Thus, the court will dismiss Cosby's request for a declaration that the Defendants have violated his rights in the past. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

### B.     Title II of the ADA and the Rehabilitation Act

Cosby alleges that the Defendants violated Title II of the ADA and the Rehabilitation Act.

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]" *Wright*, 831 F.3d at 72. Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'" *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

To establish a violation of Title II of the ADA or § 504 of the Rehabilitation Act, Cosby "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated

7

against him by reason of his disability." *Wright v. N.Y. State Dept' of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016); *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir. 2003) (citation omitted).

"A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; [or] (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citations and internal quotation marks omitted).

1. Individual Capacity Claims Under Title II of the ADA or § 504 of the Rehabilitation Act

The ADA and Rehabilitation Act permit suits only against defendants in their official rather than individual capacities. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (official-capacity claim for injunctive relief may proceed under the ADA and Rehabilitation Act); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor §504 of the Rehabilitation Act provides for individual capacity suits against state officials."). Thus, any ADA and Rehabilitation Act claims asserted against the Defendants in their individual capacities are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

2. Official Capacity Claims Under Title II of the ADA or § 504 of the Rehabilitation Act

It is unsettled in the Second Circuit whether an individual may assert an ADA or Rehabilitation Act claim against a state actor in his or his official capacity. *See Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (collecting cases illustrating that "[w]hether individuals can be sued for damages under the ADA or Rehabilitation Act in their official capacities . . . is unsettled in the Second Circuit"

(citation omitted)). Some courts have reasoned that individuals can be sued for damages in their official capacities under the ADA and Rehabilitation Act because the official capacity suit is against the public entity rather than individual state officer. S*ee*, *e.g.*, *Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011) (permitting official capacity suits under the ADA or Rehabilitation Act to proceed against individuals in their official capacities claim); *Cole v. Goord*, No. 05-CV-2902, 2009 WL 2601369, at *4–5 (S.D.N.Y. Aug. 25, 2009) (citing *Henrietta D*, 331 F.3d at 288). However, a plaintiff seeking damages must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability. *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 380 F.3d 98, 112 (2d Cir. 2001); *Monroe*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *15; *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010). *See also United States v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"). Thus, drawing all inferences in Cosby's favor on this initial review, the court will consider whether Cosby has plausibly alleged ADA and Rehabilitation Act claims for monetary damages against the Defendants in their official capacities.

The court assumes for purposes of this initial review order that Cosby is a "qualified individual"[1] who is substantially limited in a major life activity based on his allegations that he has ankle-foot orthosis and uses a wheelchair. [#1] at 5.

---

[1] A "qualified individual" with a disability has a physical or mental impairment that "substantially limits one or more of that person's major life activities[,]" including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (1)(A) & (2)(A);

Cosby asserts that the Defendants failed to provide him a reasonable accommodation for his disability while he was in the RHU, [#1] at 5-8, and that the Defendants discriminated against him as "a disabled prisoner." *Id.* at ¶ 21. Because Cosby has not requested any specific injunctive relief but rather requests only damages against the Defendants in their official capacities, the court first considers whether his allegations satisfy *Garcia*'s standard for an official capacity damages claim, namely that a defendant "was motivated by either discriminatory animus or ill will *due to disability*[.]" *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 112 (2d Cir. 2001) (emphasis added); *See Fishman v. Office of Court Admin. New York State Courts*, No. 18-CV-282 (KMK), 2020 WL 1082560, at *8 (S.D.N.Y. Mar. 5, 2020).

Cosby's allegations do not plausibly suggest that RN Michelle, RHU Manager Claudio, ADA Coordinator Santana, Warden Barone, and Health Services Program Director Gallagher withheld his requested accommodations due to a discriminatory animus or ill will based on his disability. *See Davis v. Collado,* No. 16-CV-7139 (KMK), 2018 WL 4757966, at *8 (S.D.N.Y. Sept. 30, 2018) (noting plaintiff failed to allege discriminatory comments suggesting discriminatory animus or ill will). Cosby's conclusory statement that the Defendants discriminated against him as a disabled prisoner is insufficient to establish his official capacity claim for damages. *See Fishman*, No. 18-CV-282 (KMK), 2020 WL 1082560, at *8 (dismissing ADA official capacity claim for damages absent allegations suggesting "discriminatory animus or ill will due to disability[;]" noting absence of discriminatory comments and "any factual, non-conclusory allegation that Defendants treated disabled persons any differently than non-

---

29 U.S.C.A. § 705(20)(B).

10

disabled comparators."); *Clay v. Lee,* No. 13-CV-7662, 2019 WL 1284290, at *7 (S.D.N.Y. Mar. 20, 2019) ("These conclusory allegations fail to allege that Defendants acted with 'discriminatory animus or ill will' at all, let alone 'due to" Plaintiff's alleged "mental health issues.'"); *Russell v. New York*, No. 18-CV-8543 (VSB), 2019 WL 4805687, at *5 (S.D.N.Y. Sept. 30, 2019) ("Although Plaintiff broadly asserts that Defendants 'intentionally discriminated against Plaintiff . . . ,' such vague, unsupported allegations are insufficient to establish the discriminatory animus necessary to abrogate Defendants' sovereign immunity"). Cosby's allegations indicate that these defendants may have been delinquent in their job responsibilities by failing to respond to or satisfy Cosby's requests, but they do not suggest that these defendants were motivated by a discriminatory animus or ill-will due to Cosby's disability.[2] Thus, the court must dismiss the ADA and Rehabilitation Act official capacity claims for damages against RN Michelle, RHU Manager Claudio, ADA Coordinator Santana, Warden Barone, and Health Services Program Director Gallagher.

However, Cosby has alleged that Lieutenant Rusi placed him in a non-handicap accessible cell based on a false disciplinary report after Cosby had notified her of his need for the handicap accessible cell and Assistive Aids. [#1] at 5. Although these allegations against Rusi are sparse, the court will construe them broadly to suggest that Lieutenant Rusi acted with a discriminatory motivation or ill-will based on Cosby's disability. The court must consider next whether Lieutenant Rusi denied Cosby the opportunity to participate in or benefit from public services, programs, or activities, or have otherwise discriminated against him "by reason

---

[2] Cosby has alleged that RN Michelle responded with, "Oh well," after he informed her that he could not wear state shoes. [#1] at 6. However, this allegation alone does not establish a discriminatory animus or ill-will due to his disability.

11

of" his disability rather than a legitimate nondiscriminatory reason. *See Torrez v. Semple*, 2018 WL 2303018, at *8 (D. Conn. May 21, 2018). A "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," and a public entity must "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2009); *see also See Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 2079462, at *3 (D. Conn. Apr. 30, 2020) (considering ADA claim for ADA-compliant toilet and sink). Here, Cosby has alleged that he was deprived of a non-handicap accessible cell and Assistive Aids for his AFO support. Assuming that Cosby is a qualified individual under the statutes and construing the allegations broadly, the court concludes that Cosby has sufficiently alleged the elements of his disability claims that he was denied reasonable accommodation claims under the ADA and Rehabilitation Act. The court will permit this claim against Lieutenant Rusi to proceed beyond initial review for further consideration of whether Cosby is, in fact, a qualified individual as defined by the statutes, and whether he made requests for reasonable accommodations that were denied due to a discriminatory motivation or ill-will due to disability. This ruling is without prejudice to the filing of a motion to dismiss.

### IV.     ORDERS

The Court enters the following orders:

(1) The case shall proceed against Lieutenant Rusi, RN Michelle, ADA Coordinator Santana, Health Services Program Director Gallagher, RHU Manager Claudio, and Warden Barone in their individual capacity for damages on Cosby's Eighth Amendment claims; and against Lieutenant Rusi in her official capacity on the ADA and Rehabilitation Act claims. All other claims are dismissed. If Cosby believes he can allege facts to cure the deficiencies

identified in this ruling, he may file a motion to amend and attach an amended complaint within **twenty-one (21) days** from the date of this order.

(2) The clerk shall verify the current work address of Lieutenant Rusi, RN Michelle, ADA Coordinator Santana, Health Services Program Director Gallagher, RHU Manager Claudio, and Warden Barone, who are alleged to work at MacDougall-Walker Correctional Institution, with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If the defendants fail to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendant, Lieutenant Rusi in her official capacity.

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) The Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may

also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the

court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

/s/
Michael P. Shea
United States District Judge

**SO ORDERED** this 1st day of July 2020, at Hartford, Connecticut.